## 'AUSTIN v. PULSCHEN et al.*

### No. 15,835; March 18, 1895.

#### 39 Pac. 799.

**Mortgages—Priority of Lien.**—Title to Land in Suit was in B., who agreed to convey to H. on payment of balance of price, and H. agreed to convey to plaintiff on same condition, and gave her possession. Plaintiff agreed to sell to P. for $5,500, and to convey on payment of $3,200, but was to retain possession until full payment. P. applied to defendant for $3,200—$2,700 to pay balance to B., and $300 to pay plaintiff, of whom he informed defendant he was purchasing. Defendant procured an abstract to the land which showed the agreements to convey between B. and H., and H. and plaintiff, and was informed by counsel that plaintiff should convey to P. in order to perfect the latter's title; and he sent men to inspect the premises, who found plaintiff's husband in "apparent" possession, cultivating the land as an employee of P. Thereafter, and on the day before the deeds were executed to P. by B. and plaintiff, defendant loaned P. the money as requested, and took a mortgage of the land. Held, that defendant was not a mortgagee without notice of plaintiff's lien for the unpaid price.

APPEAL from Superior Court, Santa Clara County; John Reynolds, Judge.

Action by Mary A. Austin against Gustav Pulschen, R. H. McDonald, Jr., and Isador Rosencranz. From a judgment refusing her a preference of lien, plaintiff appeals. Reversed.

J. R. Welch for appellant; Dorn & Dorn and Morehouse & Tuttle for respondents.

VANCLIEF, C.—Action to enforce a vendor's lien. On March 28, 1891, plaintiff and defendant Pulschen entered into an agreement whereby the former was to sell to the latter a lot of land containing ten acres, situate in the county of Santa Clara, at the price of $5,500, of which price $3,200 was to be paid upon delivery of the deed, and the balance to be secured by two promissory notes of Pulschen—one for $1,000, payable eight months after date; and the other for

*For subsequent opinion see 5 Cal. Unrep. —, 42 Pac. 306.

$1,300, payable eighteen months after date. And, as further
security for the payment of these notes, the plaintiff was to
retain possession of the lot until they should be paid. At
the time of the agreement (March 28, 1891) the legal title
to the lot was in Bruce and Kent, who had given a bond for
a deed of the same to Charles Henderson, upon payment to
them by Henderson of a balance of purchase money. Under
these circumstances, Henderson agreed to sell the lot to plain-
tiff for $5,000, of which she paid $2,500 at the time of the
agreement, and Henderson gave her a bond for a deed to be
executed upon her payment of the balance, and also gave
her possession of the lot. While plaintiff was thus in pos-
session, she agreed to sell the lot to defendant Pulschen, as
above stated. On April 1, 1891, three days after his agree-
ment with plaintiff, Pulschen applied to the defendant Mc-
Donald for a loan of $3,000, and at the same time told Mc-
Donald that he was about to purchase said lot from plain-
tiff, and that he wanted the loan of $3,000 to pay Bruce
and Kent the balance of purchase money due them from
Henderson, then amounting to $2,700, and to pay to plain-
tiff $300. At the time of his application for the loan, Pul-
schen was indebted to McDonald or to the Pacific Bank in
the sum of $1,500, secured only by his promissory note; and
he offered to secure both this existing debt and the loan of
$3,000 by a mortgage on said lot. Thereupon McDonald
procured an abstract of title, upon examination of which his
counsel advised him that Pulschen's title would be made
perfect by conveyances to him from Bruce, Kent and the
plaintiff, and also from certain other persons who, it is ad-
mitted, had no title to or interest in the lot; and such deeds
were completely executed on April 17, 1891. One day prior
to the delivery of the deed of Bruce, Kent and plaintiff,
to wit, on April 16th, Pulschen made his promissory note
to McDonald for $4,500, and, to secure payment thereof,
executed a mortgage of said lot. It does not expressly
appear, however, that Pulschen received the $3,000 loaned
to him before April 17th, when the deed of Bruce, Kent and
plaintiff was delivered. When Pulschen applied for the loan,
McDonald turned him over to Mr. Tomblin, who was then
in the employ of the Pacific Bank, and who transacted the
business of making the loan and taking the mortgage to secure

both the loan and his prior debt of $1,500. The foregoing is an outline of the principal facts as found by the court. Other facts considered material will be stated in connection with the points to which they are relative.

The court decided, as matter of law, "that the plaintiff, Mary A. Austin, took, had, and now has, a lien upon said premises as security for the payment of the sum of $2,300, the balance of said purchase price, together with interest thereon from April 17, 1891''; but further found that McDonald is a subsequent mortgagee of the premises for $4,500 in good faith, and for value, and without notice of the vendor's lien or claim of lien; and, therefore, that the mortgage lien is superior to that of the plaintiff, and must be first satisfied; and so adjudged. The plaintiff brings this appeal from that part of the judgment which is in favor of the defendant McDonald, preferring his mortgage lien to her vendor's lien.

Appellant contends that the findings of fact do not support the conclusions of law nor the judgment in favor of defendant McDonald; and so it appears to me. The court found that the bond of Bruce and Kent to Henderson, and that of Henderson to plaintiff, were duly recorded long before McDonald obtained the abstract of the record title, upon which he took the advice of counsel as above stated; that the plaintiff took actual possession of the lot on the twenty-fifth day of October, 1889, and continued in such possession until July 14, 1891; and that it was a part of the agreement between plaintiff and Pulschen that she should retain the possession until he paid her the balance of the purchase price. From these facts the court correctly drew the conclusion of law that plaintiff "took, had and now has, a lien upon the premises as security for the payment of the sum of $2,300, the balance of said purchase price," but erred in the conclusion that McDonald was a mortgagee in good faith, without notice of plaintiff's prior lien. Plaintiff's possession of the premises at the time he took the mortgage was, under the then existing circumstances, sufficient to put McDonald upon inquiry as to her rights, and whether Pulschen had fully paid the purchase money, knowing, as he did before he took the mortgage, that Pulschen was about to purchase the premises from her; and, in the absence of diligent and unavailing

inquiry on his part as to her rights, he must be presumed to have taken his mortgage with full notice of all her legal and equitable rights (Pell v. McElroy, 36 Cal. 268; Scheerer v. Cuddy, 85 Cal. 270, 24 Pac. 713; Montgomery v. Keppel, 75 Cal. 128, 7 Am. St. Rep. 125, 19 Pac. 178); and of such inquiry the burden of proof was upon him (Long v. Dollarhide, 24 Cal. 218; Landers v. Bolton, 26 Cal. 419; Withers v. Little, 56 Cal. 370; Eversdon v. Mayhew, 65 Cal. 163, 3 Pac. 641); yet there is no finding nor evidence of any effort or inquiry by or on behalf of McDonald to ascertain whether the purchase money had been paid, or by what right the plaintiff remained in possession of the premises.

Counsel for respondents contend that the presumption of such notice is rebutted by the following findings: "That said McDonald, Jr., sent to Santa Clara county two different persons to grade and examine said property, and report the value thereof; that said persons reported that said property was good security for said $4,500 note. . . . . But said McDonald, in the course of his inquiries of said property and title, discovered no fact sufficient to give him any notice whatever of any rights on the part of the plaintiff herein to any lien or claim in and to said lands or any part thereof; and the agents who visited the property found the husband in the apparent possession of said premises, who was cultivating the land for and as an employee of said Pulschen." In all this there is nothing indicating that any inquiry was addressed to the plaintiff, who was in actual possession of the lot, claiming to own it, and proposing to sell it to Pulschen. McDonald had actual notice from Pulschen that the latter was to purchase the lot from plaintiff, and was advised by his attorneys that she must convey to Pulschen in order to perfect his title. Of course, plaintiff's husband resided with her on the lot, and may have appeared, to the "two different persons" whom McDonald sent to estimate and report the value of the lot, to be in possession, since it does not appear that either of those unnamed persons made any inquiry as to who was in the actual possession. They were sent to estimate and report the value of the property, and not to interview the plaintiff or her husband as to who was in actual possession, or when the purchase money would be paid. They reported the value of the property before the mortgage was

executed, but it does not appear when, if ever, they reported that the husband was apparently in possession, cultivating the lot as employee of Pulschen, nor does it appear that the husband was ever employed by Pulschen; and, even if the husband had been so employed, such employment would not have been inconsistent with the admitted fact that plaintiff alone was in possession, claiming to be sole owner, and that the unpaid purchase money was coming to her.

The finding that "McDonald, in the course of his inquiries of said property and title, discovered no fact sufficient to give him any notice," etc., is but a conclusion of law, not warranted by the findings of facts. The findings do not show what facts McDonald discovered, nor, indeed, what inquiries, if any, he made. As before remarked, the onus was upon him to prove that he diligently inquired of all persons in possession, or apparently in possession. He should have inquired of the plaintiff, who is admitted to have been in possession, and also of her husband, if he was apparently in possession. Had he done so, the presumption is that he would have been fully informed of plaintiff's lien on the land to secure payment of purchase money, which in legal effect is equivalent to actual notice of such lien. It follows that the vendor's lien of the plaintiff is prior to that of the mortgage to McDonald, and is entitled to preference in payment from the proceeds of the sale of the mortgaged property.

I therefore think that part of the judgment appealed from should be reversed, and the cause remanded, with instruction to the court below to modify the judgment in accordance with this opinion.

We concur: Belcher, C.; Britt, C.

PER CURIAM.—For the reasons stated in the foregoing opinion, that part of the judgment appealed from is reversed, and the lower court is instructed to modify the judgment in accordance with said opinion.