[No. 15835. In Bank.—May 4, 1896.]

## MARY A. AUSTIN, APPELLANT, *v.* GUSTAV PULSCHEN ET AL., RESPONDENTS.

VENDOR'S LIEN—SALE OF EQUITY—POSSESSION AS SECURITY—CONVEYANCE TO VENDEE—MORTGAGE — BONA FIDE ENCUMBRANCES.—Where the vendor of an equity arising under an unfulfilled contract of purchase agreed with the vendee that a deed should be executed to the vendee, upon payment of the residue of the purchase money due to the original vendors, besides a cash payment to the vendor of the equity, and that possession should be retained by the vendor until the residue of the agreed price should be 'paid in full, as evidenced by note of the vendee to the vendor, such agreement for possession is an exclusive security, and the vendor has not a vendor's lien upon the premises, such as a court of equity will create to secure the purchase money; and where money was borrowed by the vendee to make the cash payments required to obtain the deed, and a deed was executed to the vendee by the original vendors, and joined in by the vendor of the equity, whereupon a mort-gage was immediately executed by the vendee, without knowledge of the vendor, to the lender of the money, who did not know that the vendor of the equity had not been paid in full, such mortgagee is protected as a bona fide encumbrancer against the claim of the vendor for the unpaid purchase money.

ID.—EFFECT OF POSSESSION — CONVEYANCE BY POSSESSOR — PRESUMPTION —INQUIRY.—When one in possession of land makes an absolute conveyance of it, the presumption is that he did so upon an adequate consideration; and unless there is some circumstance which indicates the contrary, persons may deal with the grantee on that supposition, and are not under obligation to inquire further of the possessor.

ID. — DEED BY VENDOR TO THIRD PERSON—TRANSFER OF POSSESSION.— 'When the vendor of an equity, who retained the possession of the premises as security for unpaid purchase money, executed a deed of the premises to a third person and transferred to him the possession of the premises, the vendor, if originally entitled to a vendor's lien for the unpaid purchase money, could not thereafter enforce such lien.

APPEAL—REHEARING IN BANK — MINUTE ORDER — JURISDICTION OF SUPREME COURT—CASE AFFIRMED.—*In re Jessup*, 81 Cal. 408, affirmed as to the jurisdiction of the supreme court in Bank to grant a rehearing by an order of the court entered upon the minutes.

APPEAL from a judgment of the Superior Court of Santa Clara County. JOHN REYNOLDS, Judge.

The facts are stated in the opinion of the court.

*J. R. Welch*, for Appellant.

Respondent is not an encumbrancer in good faith, and he took the mortgage with full notice that there

was a balance of the purchase price unpaid. The findings do not support the decision that said mortgage of McDonald, Jr., is a prior and inferior lien to that of plaintiff. (Civ. Code, secs. 18, 19, 2897, 2898, 3046; 2 Jones on Liens, 1069; *Montgomery* v. *Keppel*, 75 Cal. 128; 7 Am. St. Rep. 125; *Pell* v. *McElroy*, 36 Cal. 277; 2 Pomeroy's Equity Jurisprudence, sec. 593; 16 Am. & Eng. Eucy. of Law, 790–95.) Possession by plaintiff, even if she had already parted with her record title at the time the mortgage was taken in favor of respondent, is conclusive evidence of notice. (*Pell* v. *McElroy*, *supra*; *O'Rourke* v. *O'Conner*, 39 Cal. 446; *Peasley* v. *Mc-Fadden*, 68 Cal. 615; *Scheerer* v. *Cuddy*, 85 Cal. 272; *Hyde* v. *Mangan*, 88 Cal. 326.) Respondent is not an encumbrancer for value, and the judgment on this point is not supported by the findings or justified by the evidence. (Civ. Code, sec. 3048, and note; *Aubuchon* v. *Bender*, 44 Mo. 565; *Mendenhall* v. *Treadway*, 44 Ind. 134.) Mrs. Austin did not waive her lien by her " deeds" to Rosencrantz. A waiver is a matter of intention of the parties. (*Griffin* v. *Blanchar*, 17 Cal. 74.) If the deeds to Rosencrantz operated as a conveyance of the premises, then these deeds, being unacknowledged, were absolutely void for all purposes under section 1093 of the Civil Code. (*Mathews* v. *Davis*, 102 Cal. 207; *Leonis* v. *Lazzarovich*, 55 Cal. 52.) McDonald should not be subrogated to the Bruce and Kent claim for the reason that he never paid that claim. (Civ. Code, sec. 2904.) The order granting a rehearing should be disregarded and set aside, as a judgment in Bank is final after a judgment in one of the departments. (Code Civ. Proc., sec. 45; *Hegard* v. *California Ins. Co.*, 72 Cal. 540; *Adams* v. *Dohrmann*, 63 Cal. 417; *Grangers' Bank* v. *San Francisco*, 101 Cal. 199; *Durgin* v. *Neal*, 82 Cal. 599.)

*Sawyer & Burnett*, for Respondents.

Respondent acted in good faith, without any knowledge of any fact that would put him on notice of the " secret invisible lien" of plaintiff. (*Avery* v. *Clark*,

87 Cal. 625; 22 Am. St. Rep. 272.) The deed from Pulschen to Rosencrantz did not convey the title. The title remained in Pulschen. (*Moisant* v. *McPhee*, 92 Cal. 76; *Raynor* v. *Drew*, 72 Cal. 309; *Healy* v. *O'Brien*, 66 Cal. 519.) Therefore, the deed from Mrs. Austin to Rosencrantz, if valid, inured to the benefit of Pulschen and his mortgagee. The deeds passed the title although unacknowledged. (*Landers* v. *Bolton*, 26 Cal. 405; *Ricks* v. *Reed*, 19 Cal. 553.) The right to a vendor's lien does not arise from any contract between the parties, but is the creature of equity, and is established solely for the security of the vendor. (*Woolley* v. *Wickerd*, 97 Cal. 70; Jones on Mortgages, sec. 195; 11 Devlin on Deeds, sec. 1250; Overton on Liens, sec. 609.) McDonald is entitled to subrogation to the extent of the $2,700 which was paid to Bruce and Kent, that being the balance of the purchase money. (Civ. Code, sec. 2404; *Redington* v. *Cornwell*, 90 Cal. 49; *Shaffer* v. *McCloskey*, 101 Cal. 576; *Coffee* v. *Tevis*, 17 Cal. 239; *Matzen* v. *Shaeffer*, 65 Cal. 81; *Tolman* v. *Smith*, 85 Cal. 280; *Carr* v. *Caldwell*, 10 Cal. 380; 70 Am. Dec. 740; *Carpentier* v. *Brenham*, 40 Cal. 221; *Randall* v. *Duff*, 107 Cal. 33; Sheldon on Subrogation, sec. 2.)

Temple, J. — Action to foreclose a vendor's lien. Judgment was entered for plaintiff foreclosing the lien, but subject to a mortgage in favor of defendant McDonald for $4,500.

The land was owned by Bruce and Kent. Henderson contracted to purchase from them and paid a portion of the purchase price, but left $5,000 unpaid. Henderson sold one-half to plaintiff for $5,000—one-half paid in cash. A deed was to be made by Bruce and Kent upon payment of the other half with interest.

March 28, 1891, plaintiff agreed to sell the property to Pulschen for $5,300, of which $2,700 was to be paid to Bruce and Kent in satisfaction of their claim upon the land. Three hundred dollars was to be paid to plaintiff in cash upon the delivery of a deed from her to Pulschen,

and $2,300 according to the terms of two promissory notes then executed by Pulschen. It was expressly agreed that plaintiff should retain possession of the premises as security until all the purchase money was paid.

The contract between plaintiff and Pulschen does not appear to have been in writing. Pulschen applied to defendant McDonald for the money which would enable him to carry out the agreement with plaintiff. It seems he already owed McDonald $1,500. He required $3,000 more for immediate use in his agreement. McDonald referred the matter to his attorneys, Dorn & Dorn, who, after having examined the records, advised him that he could safely take the mortgage if Pulschen would first procure deeds from Bruce and Kent and from Mrs. Austin. Proceedings were then taken to procure those deeds. Bruce and Kent signed and acknowledged a deed April 11th. This was, however, not delivered until April 17th, when the plaintiff also signed it. And on that day the money was paid by Pulschen, which he thus obtained from McDonald, as follows: To Bruce and Kent as principal $2,500, and as interest $200. To plaintiff $300, which was in pursuance of the agreement between herself and Pulschen. On the same day Pulschen acknowledged and delivered a mortgage to McDonald upon the premises for $4,500.

It is found that at the time McDonald did not know that Pulschen had not paid plaintiff in full, and plaintiff did not know that Pulschen had mortgaged, or was about to mortgage, the property to McDonald.

Under such circumstances, is McDonald an encumbrancer in good faith and without notice? The transactions, it will be seen, were practically simultaneous. The deeds, it is true, bore a different date, but the findings conclusively show that the mortgage and the deeds were all delivered on the 17th of April. Indeed, it fairly appears that McDonald, or his attorneys for him, paid the money to Bruce and Kent and to Mrs. Austin, for McDonald was advised that he could not safely loan the

money until deeds were obtained from them; and he did not until such deeds were had, and they were procured by the use of the money which he advanced.

It is claimed that the fact that plaintiff was in possession of the premises was sufficient to put McDonald upon inquiry. So it did, and to protect himself against any claim she might have, he insisted upon getting, and did get, her deed.

When one in possession of land makes an absolute conveyance of it, the presumption is that he did so on an adequate consideration. Unless there is some circumstance which indicates the contrary, persons may deal with the grantee on that supposition, and are not under obligation to inquire. That a grantor should be in possession when he makes his deed is the natural and usual condition of things. If he remains in possession afterward, that fact gives rise to a different inquiry. Here, when McDonald took his mortgage, plaintiff had not remained in possession after her deed, for they were practically simultaneous.

Whether the fact that a grantor remains in possession after the execution of his deed has the effect of putting parties dealing with the grantee on inquiry, is a mooted question. (2 Pomeroy's Equity Jurisprudence, sec. 617.) In this state, where a deed absolute on its face may be shown to be a mortgage by parol, the courts will probably feel themselves bound to hold that it does have that effect. Still, I cannot see how one could be put on inquiry until the possession has continued long enough to indicate to one who knows only the fact of possession that the grantor has remained in possession.

But for still another reason plaintiff cannot enforce her lien upon the premises. On the eighteenth day of May, 1891, Pulschen made a deed of the premises to defendant Rosencrantz. On the fourteenth day of July, 1891, Rosencrantz paid plaintiff $270 for certain personal effects and for possession of the premises. She then delivered the premises to him, and executed and delivered to him two unacknowledged deeds to said

premises. And it is found that Rosencrantz entered into possession of the premises and has ever since remained in possession.

Of course, if Mrs. Austin ever had a vendor's lien she can assert no such claim after making those two conveyances. It is suggested that the finding does not say that plaintiff executed conveyances to Rosencrantz. The finding is that she executed and delivered deeds to said premises. The same word is used in the same sense in two other findings in this case, and in these cases the use has not been criticised. But the criticism is unfounded. A contract under seal is not a deed in this state. The only use of the word here is the popular sense meaning a conveyance of land, and, in that sense, its use has become common by lawyers and laymen. As used in the findings it is not ambiguous.

I have discussed the case as though Mrs. Austin had once a vendor's lien, but in my opinion she was never entitled to the vendor's lien, which is the creation of courts of equity to secure to a vendor his purchase money. The title to the land was never in her, and, by her agreement with Pulschen, was never to come to her. It was agreed that she was to be secured by being left in possession until she was paid. She had then other security, and was therefore never entitled to a vendor's lien.

As no defendant has appealed, the judgment in plaintiff's favor will not be disturbed.

The alleged erroneous rulings in regard to the introduction of testimony were upon immaterial matters and are correct.

In regard to the motion to set aside the order granting a rehearing and for a *remittitur*, it is sufficient to refer for a consideration of the question raised to *In re Jessup*, 81 Cal. 466.

The judgment is affirmed.

VAN FLEET, J., HARRISON, J., GAROUTTE, J., and HENSHAW, J., concurred.

McFarland, J., dissenting.—I dissent, and adhere to the opinion heretofore rendered by the court in Bank after the first rehearing (*Austin* v. *Pulschen*, 42 Pac. Rep. 306), which approved the opinion of Commissioner Vanclief. (*Austin* v. *Pulschen*, 39 Pac. Rep. 799.) Heretofore those who favored the contention of respondent McDonald only went so far as to hold that he ought to be subrogated to the position of Bruce and Kent (see dissenting opinion to *Austin* v. *Pulschen*, 42 Pac. Rep. 307); but now it is to be held that the judgment be affirmed, which makes the whole amount of his mortgage, including the old personal debt to him from Pulschen, superior to the lien for the debt of the latter to appellant for the purchase money of the very land out of which McDonald is now to receive his old and apparently worthless claim. Respondents' side of the case has assumed, from time to time, many new phases; but under neither of them can appellant, in my opinion, be compelled to lose her purchase money and her lien therefor. She sold to Pulschen in the faith that he would pay the $2,300 evidenced by his two notes; the representations of Pulschen that he could and would pay them were, as the court found, "false and were made with intention to deceive plaintiff"; when McDonald took his mortgage from Pulschen, as the court found, "said Pulschen on said date informed said McDonald that he was about to purchase said described premises from said plaintiff"; she was then in possession, and her contract from her grantor was of record; and McDonald was bound to know the condition of the purchase money on the sale from her to Pulschen. She paid at least $2,500 for this land to Henderson. How much more she paid does not appear, although it appears that the $2,500 was for a "balance." Of this amount she has received only $300, and will probably receive no more; for if the property were sufficient to pay all, this litigation would hardly have occurred. It is said now that appellant never had a vendor's lien, because she never had the legal title and retained possession as security. But she had, under any view, an

equitable title, was in possession, and sold to Pulschen; and, under these circumstances, had full right to a vendor's lien. "One who sells an equitable right to land retains a lien on it for the consideration whenever, under the same circumstances, the vendor of the legal title would hold an equitable lien. The same principle and reason apply to both cases." (*Stewart* v. *Hutton*, 3 J. J. Marsh. 179. Also other cases cited in note to 2 Sugden on Vendors, 7th Am. ed., 857.) Moreover, substantially, and in legal effect, she had the legal title and conveyed it to Pulschen; for, as found by the court, "at the request of said plaintiff," the legal title was conveyed to him by Bruce and Kent. If Bruce and Kent had conveyed to her, and she had immediately conveyed to Pulschen, so that there would have been two deeds instead of one, would not the effect have been the same? Pulschen contracted with appellant for the legal title, and got it; and McDonald's counsel advised him that it would be necessary to get a deed from her, and she also joined in the conveyance. Therefore, Pulschen, for the purpose of avoiding a vendor's lien, could not deny her title, and his successors with notice would be in the same position.

I cannot see how appellant lost her vendor's lien by retaining possession of the land. By so doing she did not take any security other than her vendor's lien; and her possession was simply notice of her lien to all the world; for, when the vendor retains possession of the land, subsequent purchasers from the vendee are put on inquiry as to whether the purchase money has been paid. (*Hopkins* v. *Garrard*, 7 B. Mon. 312.) And the court finds that appellant was in possession "ever since said twenty-fifth day of October, 1889, to the fourteenth day of July, 1891," the latter date being nearly three months subsequent to the date of McDonald's mortgage, which was April 16, 1891.

As to the finding that appellant afterward, on July 14, 1891, "signed and delivered" to one Rosencrantz "two unacknowledged deeds to said premises," it is not neces-

sary to say more than was said in the opinion of the court, to be found in *Austin* v. *Pulschen,* 42 Pac. Rep. 306. What the nature of those "deeds" thus blindly mentioned in the findings were does not appear; but the court below attached no importance to them, for it found that appellant did not thereby "waive any lien," and that Rosencrantz was a mere mortgagee of Pulschen to the extent of $600.

It was contended in the petition for rehearing that McDonald should be subrogated to the lien of Bruce and Kent for $2,700. Now, in the first place, the judgment does not go upon any theory of subrogation. It gives McDonald a priority as to the whole of his mortgage for $4,500 and interest, and makes no attempt to segregate the amount of the Bruce and Kent claim. In the next place, the answer of McDonald sets up no right of subrogation. It makes no reference whatever to the claim of Bruce and Kent, and intimates no right to be put in their place. It denies that appellant had any claim of any kind to the premises; denies that Pulschen *ever purchased from appellant;* avers that, at the time Pulschen mortgaged to him, Pulschen owned the property "free and clear from *any and all liens,* encumbrances, claims thereto or *thereon* of any kind, name, and nature whatever"; and stands upon his mortgage as the first and only lien on the premises. Clearly, therefore, if there is to be a subrogation, the present judgment should be reversed; and McDonald, if he chooses now to rely on subrogation, should amend his pleading so as to present that issue. Moreover, for another reason, the pleadings and findings should be different if the theory of subrogation is to be adopted. So far as the facts upon which subrogation could be awarded can be gathered from the present findings, they are these: The claim of Bruce and Kent for a balance of $2,500 purchase money arose upon a bond given by them to convey to Henderson a tract of land consisting of *twenty acres.* Now, the appellant bought from Henderson the undivided one-half of that tract, with

the privilege of selecting either the north or south half in severalty, and she did select the south half, "and entered into possession of said south half of said lot, and ever since said twenty-fifth day of October, 1889, to the fourteenth day of July, 1891, continued in the possession of the same"; and this south half constitutes "the premises" upon which she seeks to enforce her vendor's lien, and which is involved in this action. Now, would equity allow respondent to enforce the whole of the old claim of Bruce and Kent against appellant's one-half of the property? It is, I think, quite apparent that the matter of subrogation could not be equitably disposed of without amended pleadings and specific findings upon issues thus raised. Under any view, therefore, the judgment should be reversed.