[No. 12266.    Department Two.—February 16, 1888.]

A. MONTGOMERY, RESPONDENT, v. GARRET KEPPEL ET AL. SPRING VALLEY MINING AND IRRIGATING COMPANY, APPELLANT.

MORTGAGE OF AFTER-ACQUIRED PROPERTY — KNOWLEDGE OF TERMS OF PURCHASE — PRIORITY. — A prior mortgagee, who pending the negotiations for his mortgage acquires knowledge that the property offered as security belongs to a third person, and was to be purchased by the mortgagor, and that negotiations for its purchase were then pending, is charged with notice of the terms upon which the purchase is made; and where such terms involve the execution by the purchaser of a mortgage to the vendor to secure the purchase price, the latter mortgage, although subsequently recorded, is entitled to priority over the other.

ID. — MEANS OF KNOWLEDGE — NOTICE. — A mortgagee, having readily
accessible means of acquiring knowledge of a fact affecting the title to
the mortgaged property, which he might have ascertained by inquiry, is
charged with notice and knowledge of such fact.

ID. — ESTOPPEL — STATEMENTS WHEN OPERATE AS. — Statements to operate
as an estoppel must be made with the express intention to deceive, or
with such carelessness or culpable negligence as to amount to construct-
ive fraud. In accordance with this rule, the statements of the secretary
of the defendant corporation, relied on as estopping it from setting up
the priority of its mortgage, *held,* not to operate as an estoppel.

APPEAL from a judgment of the Superior Court of
Butte County, and for an order refusing a new trial.

The facts are stated in the opinion of the court.

*Hundley & Gale,* for Appellant.

*W. F. Goad,* and *Arthur Rodgers,* for Respondent.

THORNTON, J. — The plaintiff brought this action to
foreclose a mortgage against the mortgagor, Garret Kep-
pel, and the Spring Valley Mining and Irrigating Com-
pany. Other persons were made parties, which need
not be here especially mentioned. As to all these de-
fendants except Keppel, the general allegation is made
that they have, or claim to have, some interest in or
claim upon said lands, or some part thereof, as purchas-
ers, mortgagees, judgment creditors, or otherwise, which
interests or claims are subsequent to and subject to the
lien of plaintiff's mortgage. The defendant corporation
above named set up a mortgage upon a portion of the
land covered by the plaintiff's mortgage executed by
Keppel to it; and which of these mortgages was prior
in right, as appears from the transcript, was the prin-
cipal question tried and determined by the court. It
appears from the findings of fact that the mortgage to
the corporation defendant was executed on the twenty-
second day of November, 1883, acknowledged by the
mortgagor on the same day, and filed for record in the
office of the county recorder of Butte County (where

the mortgaged property was situate) at 10:25 o'clock, on the twenty-sixth day of November, 1883. It further appears that the land mortgaged to the corporation was conveyed by it to the common mortgagor on the same day on which the mortgagor executed to the defendant above named the mortgage just mentioned; that the mortgage was executed to secure to the defendant a part of the purchase-money of the said land, the other portion having been paid by Keppel, the purchaser, in cash prior to the delivery of the conveyance to him by the defendant; that on the 24th of November, 1883, the deed of conveyance of the land sold to Keppel was delivered to him by defendant, and was recorded in the proper office in Butte County, on the twenty-sixth day of November, 1883. The mortgage to plaintiff was executed on the 22d of November, 1883, and was recorded in the proper office in Butte County on the twenty-second day of November, 1883. This last mortgage was executed to secure a loan of a large sum of money made by plaintiff to Keppel. While Keppel was negotiating with plaintiff for this loan, it became known to plaintiff that the title of a portion of the land which he (Keppel) offered as security was in the corporation defendant, for the purchase of which Keppel was then negotiating with the corporation. This purchase was consummated by the delivery of the deed above mentioned, executed to Keppel by the corporation, a payment of a portion of the purchase-money by Keppel, and, concurrently with the execution of the deed, the execution to the corporation by Keppel of the mortgage above mentioned to secure the payment of the remainder of the purchase-money. All the above constituted parts of the transaction of purchase by Keppel of the corporation of the land above referred to. Of this negotiation of Keppel to purchase, the plaintiff, at the time of making the loan to him, was aware; and he must be held to have known that the mortgage con-

veyed to him no interest in this land until the delivering of the deed by the corporation to Keppel. Being aware of the purchase by Keppel of this land of the defendant, plaintiff must be held to have known of the terms of the purchase, and all of them; and if he did not know them, he must have deliberately abstained from knowing. The evidence shows that the plaintiff was in communication with Keppel all the time that the purchase was pending, knew all the terms of it, and it would be most strange if they were not communicated to plaintiff by Keppel. Having readily accessible means of acquiring knowledge of a fact, which he might have ascertained by inquiry, is equivalent to notice and knowledge of it. This is well settled by repeated decisions of this court. (*Fair* v. *Stevenot*, 29 Cal. 486; *Smith* v. *Yule*, 31 Cal. 184; *Pell* v. *McElroy*, 36 Cal. 272; *Thompson* v. *Pioche*, 44 Cal. 516.) Under these circumstances, we must hold that plaintiff knew that a part of the purchase-money was not paid when the deed was executed to Keppel by the corporation, and that a mortgage was executed by Keppel to the corporation to secure this unpaid portion of the purchase-money at the same time that the deed was executed. This being the state of the case, we must hold that the plaintiff had notice of defendant's mortgage when the mortgage to him on the land mentioned became operative, and that, therefore, his mortgage as to this land must be postponed to that of the corporation defendant. The finding to the contrary of the above is not sustained by the evidence.

But it is urged that the corporation is by the conduct of one of its officers estopped from setting up the priority of its mortgage to that of plaintiff. This contention is based on the following facts found by the court below: "That in making said loan of eighty thousand dollars to defendant Garret Keppel, and during the time negotiations and granting of said loan, F. W. Goad, Esq., was

the agent and attorney for plaintiff, and was authorized to examine into the title of the land described in plaintiff's mortgage; that said Goad was informed that the legal title to the land described in said deed, dated October 23, 1883, from defendant Spring Valley Mining and Irrigating Company, to defendant Garret Keppel, was in said defendant corporation, grantor; that said Goad, as such agent and attorney, after obtaining said information, and on or about the tenth day of November, 1883, with defendant Garret Keppel called at the principal office of said corporation defendant, which was in San Francisco; that said Goad there met Willis E. Davis, the secretary of the Spring Valley Mining and Irrigating Company, and told said secretary that plaintiff, A. Montgomery, had employed him to examine the title to said land to see whether it was satisfactory; that he (said Goad) was employed to do so by said plaintiff, and was plaintiff's agent in such matters; that he wanted to see that the title was perfect; that plaintiff, A. Montgomery, wanted to know how much money he would have to pay the defendant Spring Valley Mining and Irrigating Company in order to get a perfect title, as plaintiff was taking a mortgage; that said secretary then gave as such sum $12,978; that said Goad then informed said secretary that if he found the title perfect in other respects at Oroville, where he was going, he should put plaintiff's mortgage on record, and upon his return to San Francisco would pay the $12,978,—give a check for it,—and take the deed of the Spring Valley Mining and Irrigating Company, which deed, being that hereinbefore referred to, had been prepared in form, and was shown to said Goad by said secretary; that said Goad went to Oroville on or about the nineteenth day of November, 1883, and staid until the 22d, when plaintiff's mortgage was acknowleged and recorded; that said Goad returned to San Francisco, and on his way back, on the 23d, paid, at the request of

defendant Garret Keppel, to the Marysville Savings Bank, $61,138.70; that upon his return to San Francisco, and upon the twenty-fourth day of November, 1883, said Goad, at his office, delivered a check in payment of said sum, $12,978, in the presence of defendant Garret Keppel, to said Davis, the secretary of the corporation defendant, of which check the following is a copy:—

"No. ——       SAN FRANCISCO, November 24, 1883.

"The Bank of California pay to Spring Valley Mining and Irrigating Company, or order, twelve thousand nine hundred and seventy-eight ($12,978) dollars.

"A. MONTGOMERY.

"Per W. F. GOAD.

"Indorsed:—

"SPRING VALLEY MINING AND IRRIGATING COMPANY.

"By WILLIS E. DAVIS, Secretary.

"That said check was paid; that, upon the delivery of said check, said secretary, Davis, delivered said deed of said corporation, executed and acknowledged by the president and secretary, to defendant Garret Keppel, and said Goad; that said Goad thereupon sent said deed to the office of the county recorder of Butte County, where the same was filed for record on the twenty-sixth day of November, 1883, as aforesaid."

We cannot see how an estoppel can grow out of these facts. In the first place, admitting that Davis was the secretary of the corporation, it does not appear that he had authority to bind or affect the corporation by any statement he might make in regard to Keppel's purchase. Conceding that he had authority to affect the corporation by the statement of a fact, the question put to him was not as to a fact, but as to a question of law. Further, that a statement shall operate as an estoppel, it must be made with the express intention to deceive, or with such carelessness or culpable negligence as to amount to constuctive fraud. (*Boggs* v. *Mining Co.*, 14 .

Cal. 367, 368; *Davis* v. *Davis*, 26 Cal. 40, 41.)   We see here no intention of Davis to deceive, nor can we perceive that plaintiff was or could be misled by anything which Davis stated to his attorney.   That the plaintiff was not *without* the means of acquiring the knowledge which he sought is too plain for argument.   He might have ascertained it from the mortgagor, with whom he was communicating all the time that the negotiation for the loan was going on; or if he had inquired of the company as to the terms of its transactions with Keppel, he would, no doubt, have ascertained what they were.   There is no estoppel shown by the evidence or the finding.   (*Davis* v. *Davis, supra.*)   The mortgage of the corporation must be held prior and superior to that of the plaintiff on the land above mentioned, and therefore the judgment and order denying a new trial must be reversed, and the cause remanded for a new trial. Ordered accordingly.

McFARLAND, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.