MANNING MAYFIELD *et al.*

*v.*

HARRIET S. TURNER *et al.*

*Opinion filed June 17, 1899.*

1. CONTRACTS—*grantee's assumption of agent's commission creates no interest in land.* The mere assumption by a grantee of the amount due from the grantor to the agent as commission for making the sale creates no lien upon or interest in the land in favor of the agent, in the nature of a resulting trust or otherwise.

2. NOTICE—*one knowing existence of trust is put on inquiry as to its terms.* One purchasing land with knowledge that it is held in trust by the grantor is not an innocent purchaser, even though he was not aware of the terms of the trust, as the knowledge of the existence of the trust should put him on inquiry as to its terms.

3. PARTNERSHIP—*test of partnership relation is the intention of the parties.* The test of a partnership relation, as between the parties, is one of intention, which must be determined by the established rules for the construction of contracts.

4. SAME—*when contract does not create partnership relation.* An agreement by the purchaser of land to pay a certain per cent of the net proceeds of a sale thereof after deducting the purchase price, taxes, improvements, expenditures, etc., with interest, to certain parties for services rendered in managing the sale under his direction, is a contract for compensation and not a partnership agreement.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM HARTZELL, Judge, presiding.

This is a bill in equity by appellees, against appellants and others, to set aside certain conveyances of real estate in Madison county to Manning Mayfield and Marcia Mayfield, and to have the lands partitioned among the complainants and others, as devisees under the will of Thomas T. Turner, deceased.

The bill sets up the following material facts: In June, 1892, Thomas T. Turner, of St. Louis, Missouri, purchased the lands in controversy from Harriet M. Wise, executrix of the last will of Peter Wise, deceased, for $25,000, which was paid by Turner, and at whose request the land was conveyed to one William McBlair, the deed being duly recorded. Thereafter McBlair executed a declaration of trust for the land to said Turner. In July, 1896, McBlair, at the request of Turner, in compliance with the terms of his trust, conveyed the property to Henry S. Turner, son of Thomas T., the deed being duly recorded. Henry S. simply held the land in trust for Thomas T., and thereafter he also executed a declaration of trust to that effect. After the death of Thomas T. this last declaration was lost. A part of the land was in 1896 platted, and a lot and a fraction sold to one Nelson Levis for $900, Thomas T. Turner receiving the purchase money. Thomas T. Turner died January 30, 1897, testate, leaving a widow, Harriet S. Turner, and seven daughters and two sons,

these complainants, his sole heirs. By his last will, duly probated in St. Louis, Missouri, in February, 1897, he provided that, with the exception of a small legacy to one Frank Gregg, his estate should be disposed of in accordance with the laws of the State of Missouri. In December, 1897, Henry S. Turner, without the knowledge or consent of complainants, conveyed the land to Manning Mayfield, in consideration of $29,500, payable $2000 in sixty days and the balance in notes due in two years, to secure which Manning Mayfield executed a mortgage on the land to Henry S. Turner, both the deed and mortgage being duly recorded. Two days later, December 4, 1897, Mayfield conveyed the property to his wife, Marcia Mayfield, who then resided in California, the deed being recorded December 6, 1897. Thereupon Marcia Mayfield executed to Manning Mayfield a power of attorney empowering him to dispose of the land.

The bill alleges that the conveyance to Manning Mayfield by Henry S. Turner was a breach of the latter's trust, and that Mayfield and wife both took the title with notice of all the facts and got nothing by their deeds, unless it was the individual interest of said Henry S. Turner under the will of his father; that the Mayfields intended to convey the property, and it was in danger of passing into the hands of innocent purchasers; that Henry S. Turner had not disposed of the notes given by Mayfield. The prayer is for an injunction, and for a cancellation of the instruments in conflict with the alleged title of complainants, and for partition.

The answer of Marcia Mayfield denies that either of the complainants has any interest in the land, and alleges that she was an innocent purchaser of the same. The answer of Manning Mayfield also denies that complainants have any interest in the land. It admits the purchase of the property from Harriet M. Wise, executrix, and that the title was taken in the name of McBlair, who subsequently conveyed it to Henry S. Turner, and

that both McBlair and Henry S. Turner held it in trust, but avers that the property was purchased by himself and Thomas T. Turner and one Moss Hunton as partners, and avers that it should be treated as personalty, and not as descending to the heirs of Thomas T. Turner upon his death, the right to dispose of it resulting, by operation of law, to himself as surviving partner, (he claiming that Hunton had sold his interest to Turner before the latter's death,) and that he was not accountable, as such surviving partner, to the heirs of said Thomas T. Turner, deceased, but only to his personal representatives.

A final decree was entered December 12, 1898, finding the facts substantially as alleged in the bill and granting the relief prayed, except as to the sum of $500 and interest, as hereinafter explained; canceling the deed to Manning Mayfield and by him to Marcia Mayfield, except as to Henry S. Turner's individual interest; canceling the mortgage from Mayfield to Henry S. Turner and the note secured thereby. From that decree this appeal is prosecuted, the complainants assigning a cross-error as to the $500 item made a lien or charge upon the land.

JOHN G. IRWIN, and DUNNEGAN & LEVERETT, for appellants.

WISE & McNULTY, (HENRY HITCHCOCK, and JOHN F. SHEPLEY, of counsel,) for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

First as to the cross-error. Prior to the purchase of the property by Turner, Manning Mayfield was employed by Harriet M. Wise, executrix, to sell the same, his compensation being agreed upon at $500, contingent upon his making a sale for $25,000, and he negotiated a sale to Thomas T. Turner for that sum. At the time of the delivery and execution of the deed and the consummation of the sale, Mayfield, being present, stated that there

was $500 of the purchase price to be paid to him, whereupon the son of Mrs. Wise, who was acting as her agent, said to Turner, (he being about to draw a check for the amount he was to pay down,) "You can make me the check for $10,000 and I will pay Mr. Mayfield, or you can make two checks, one to me for $9500 and one to Mayfield for $500." Mayfield then said: "Make the check $9500. I have an arrangement with Turner, and that will go on my arrangement." Turner thereupon did make the check $9500, and afterwards paid the balance of the purchase price as it matured. This is substantially all the evidence found in the record relating to the $500 claim. There is no theory of the law upon which, under these facts, that amount can be made a lien upon or treated as an interest in the land. There was no contract to that effect, and nothing creating a resulting trust in favor of Mayfield. The most that can be said is, that the testimony proves that the indebtedness due from Wise to Mayfield was assumed by Turner. The cross-error is well assigned and must be sustained.

As to the correctness of the decree granting the relief prayed in the bill, the first question presented is, was there a contract of partnership between Thomas T. Turner, Manning Mayfield and James Moss Hunton at the time of the purchase of the land? It cannot be seriously questioned that Thomas T. Turner purchased and paid for the land. Appellants, however, earnestly contend that there was an agreement with him that it should be treated as partnership property; that it was purchased merely for the purposes of speculation and profit, and therefore, under well established principles of equity, is to be considered and treated as personalty. The relation of partnership between parties is one of contract, and the test of such relation is the intention of the parties, to be determined by the established rules for the interpretation of contracts. (*National Surety Co.* v. *Townsend Co.* 176 Ill. 156.) The only evidence claimed to prove a

partnership relation in this case is the following letter of July 22, 1892, from Turner to Mayfield:

"*Manning Mayfield, Esq.:*   "ST. LOUIS, Mo., *July 22, '92.*

"DEAR SIR—My understanding is, that the agreement between you and Mr. Hunton and myself regarding the Wise land purchased by me and held in the name of William McBlair, in and near Alton, Illinois, is, that the control and disposition of said land is to be entirely in my hands until disposed of at private or public sale, *in toto.* I am to keep an account of all moneys received or paid out on account of said property, and when the land is sold I am to deduct from the sum total of all moneys received on account of the same all expenditures made on account of same, such as purchase money for the land, taxes, and all other expenses, of whatever nature or character, incident to the security, protection or improvement of the property, with six per cent interest from date of such expenditure, and out of the balance on hand (the net proceeds of the deal) I am to pay to you fifteen per cent and to Mr. Moss Hunton five per cent for services rendered and to be rendered in the management and sale of the property under my directions. This agreement to be binding upon myself, my heirs and assigns.

"Yours truly,   THOMAS T. TURNER."

The agreement between the parties, as thus shown, is for the future disposition of the property, and manifestly was a separate and independent transaction, made subsequently to the purchase. All the inferences fairly to be drawn from this letter are repugnant to the idea of a partnership relation between the parties at that time. The fact that the land was purchased by Turner and the title taken to McBlair at Turner's request; the declaration of trust by McBlair to Turner; the latter's payment of the purchase price, and that Turner alone bore all the financial losses and received the proceeds of the sale of a part of the land, are circumstances weighing strongly against the existence of a partnership. (17 Am. & Eng. Ency. of Law, 832-848.) Appellants lay stress upon the last sentence of the above letter: "This agreement to be binding upon myself, my heirs and assigns." We think, however, properly construed, it is against, rather than

180—22

for, their contention. It shows that Turner did not consider the property personal assets of a partnership, otherwise it would have been wholly unnecessary to bind his heirs, etc. Again, the conduct of Mayfield after the death of Turner, in his alleged purchase of the land from Henry S. Turner and conveyance to his wife, strongly tends to prove that he did not consider himself a partner of Thomas T. Turner. It is clear to our minds that the agreement, so far as one is evidenced by the foregoing letter, was merely to fix the amount of compensation to be paid Mayfield and Hunton for their services, as the latter states in his testimony.

Holding that the relation of partners did not exist, the next question is, was the conveyance by Henry S. Turner to Manning Mayfield valid and binding upon complainants? It is not disputed that Manning Mayfield, at the time of the conveyance to him, knew that William McBlair had held the land in trust for Thomas T. Turner, and that McBlair, at the request of Turner, had conveyed the same to Henry S. Turner, who also held it in trust, but it is denied that he knew the conditions of either of those trusts, or that by the terms of the trust Henry S. Turner did not have power to sell as he did. On the hearing, complainants proved that shortly after the land was conveyed to William McBlair he executed a declaration of trust to Thomas T. Turner, in which he stated that he held the legal title, only, in trust for Turner, and that it was his duty to convey it as directed by Turner, or, after his death, according to his will, and if he left no will, then to his legal heirs. It was also proved that McBlair, at the request of Thomas T. Turner, did convey to Henry S. Turner, and that Henry S. Turner executed a declaration of trust to Thomas T. Turner. The existence of this instrument after the death of Thomas T. Turner was established beyond dispute, but it was claimed, on the hearing, that it had been lost. Complainants therefore sought, after proving the loss, to show the contents of that instru-

ment by parol.   The defendants objected, on the ground
that the search for the lost instrument was not shown to
have been sufficiently thorough and complete.   The objec-
tion being overruled, proof was offered to the effect that
the declaration of trust by Henry S. to Thomas T. Turner
was substantially the same as that by McBlair.   Irrespec-
tive of this proof, knowing that Henry S. Turner held the
title in trust, Mayfield was bound by that trust, and put
upon inquiry as to its terms.   We are, however, unable
to agree with counsel in their contention that a proper
foundation was not laid for the introduction of parol tes-
timony of the contents of the lost instrument.   Pierce,
the partner of Thomas T. Turner, who was custodian of
the papers of the latter after his death, until his execu-
tor, the Mississippi Valley Trust Company, took posses-
sion of them, and Vierling, an officer of the company,
testified to the existence of the paper after the death of
Turner, and its subsequent disappearance, and the thor-
ough but fruitless search for it by them.   It is said one
Silver, a clerk in Pierce's office, might have taken it out
of the office.   It was not his business to do so or in any
way to molest it.   If he took it he did so without author-
ity, from sinister motives, and there being no evidence
showing such a motive, or any suspicion against him, the
law will not presume that he did remove it or require
evidence negativing that fact.   While it is not sufficient,
in laying the foundation for proving the contents of a
lost instrument by parol evidence, to merely prove as a
conclusion that a diligent search has been made, yet it
is not required to go to the other extreme and negative
every remote possibility that may exist.

It seems to us futile to insist, under the evidence ap-
pearing in this record, that Manning Mayfield did not
know, at the time he took his deed from Henry S. Turner,
that the latter was not the owner of the land, but that
he held it in trust for his father, and after his death for
these complainants, his widow and heirs.

We now come to the contention of Marcia Mayfield that she was a *bona fide* purchaser for a valuable consideration without notice. The conveyance by Henry S. Turner to Manning Mayfield was, as above stated, made December 2, 1897, and on December 4, 1897, he conveyed to his wife, then living in California, for a stated consideration of $35,000. This deed was filed for record December 6, 1897, (two days after its date,) presumably by Manning Mayfield, who thereupon sent the following letter to his wife:

"ALTON, ILL., *December 6, 1897.*

"*Dear Marcia*—I have sold you the Wise tract at the price of $35,000, and on time of five years at six per cent. Of course, I expect you will make the money finally out of the transaction. I enclose you a note to sign and also a power of attorney. This power will enable me to make deeds and mortgages, and in fact to do anything in relation to the property that you could do yourself if you were here in person. I want you to have the power of attorney signed by yourself and acknowledged before the clerk of the district court,—I think his name is Bremer,— and see that he does not forget to attach his official seal. It is better than to have the acknowledgment before a notary, as the official seal proves itself in any court of record in Illinois. I would like for you to get this instrument mailed back to me as soon as you do so, as every day counts with reference to my depart-ure for California to visit you. Do not destroy this letter, in order that same may be kept and used, if ever necessary, as a testimony of this sale.    Yours, lovingly,

MANNING MAYFIELD.

"When signing power, just sign 'Marcia Mayfield.' Don't put the letter 'C' in it, as you sometimes sign your name. Mail power and signed note to me at Laclede Hotel, St. Louis, and not in a registered letter, as that would delay."

The first intimation Marcia Mayfield had that Man-ning Mayfield had sold her the property was this letter. Upon the receipt of it, without investigation or inquiry, she did as the letter requested. We are unable to find from the proofs any element of an innocent purchaser in Marcia Mayfield. Every consideration necessary to secure to her such protection seems to be wanting. The record shows a state of facts amply sufficient, in connec-

tion with the foregoing letter, to justify the chancellor in finding that she was chargeable with actual notice by being put upon inquiry. In fact, we cannot see upon what reasonable theory it can be said she occupies a different or better position than her husband would if he had retained the title.

Other questions raised have been considered, but are not deemed of sufficient importance to require discussion.

For the error indicated the decree below is reversed. In all other respects it is affirmed, and the cause will be remanded to the circuit court, with direction to proceed in conformity with the views herein expressed.

*Decree affirmed in part.*