ERNEST J. WHEELER *v.* H. E. TAYLOR.

May Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1944.

*Raymond L. Miles* for the plaintiff.

*Arthur L. Graves* for the defendant.

BUTTLES, J.   The plaintiff owns and operates by water power a saw mill in the town of Westmore on Mill Brook about two miles below Long Pond from which the brook flows.   Water is brought to the mill through a ditch or raceway from a small dam on the brook.   There is another dam at the outlet of Long Pond, owned by the defendant, with a flume and flashboards, by which the water emptying into Mill Brook can be controlled.   During dry periods in the summer months sufficient water is not obtainable through the raceway from the small dam to operate the mill, so that it is then necessary to increase the flow by means of the flashboards on the defendant's dam at Long Pond, the procedure being to remove the flashboards in the morning and replace them at night.   This procedure was followed by the plaintiff until after a quarrel between the parties in 1941 when the defendant spiked the flashboards in place and has ever since prevented the plaintiff from removing them when an increased supply of water was needed. By this suit in equity the plaintiff seeks to enjoin the defendant from interfering with the plaintiff's use of the flashboards for the purpose above described.

The original bill asserted a prescriptive right to their use but this claim has been abandoned and he now relies upon the claim set up by an amendment that the right to control the flow of water by the use of the flashboards is an easement appurtenant to the mill site which passed to him by his deed of the property.   After hearing, findings of fact were made and filed, a decree was entered for the defendant and the plaintiff excepted.   The only question now before us is whether the findings show, as a matter of law, that the plaintiff possesses the easement that he claims. ·

The plaintiff is the defendant's father-in-law and both parties derived their title from a common owner, the Parker Young Company, which purchased the Long Pond dam in 1902 and the property upon which the plaintiff's mill now stands in 1905.   The two properties are not contiguous, the lands of several other proprietors lying between them.   The Company sold the mill site to the plaintiff in June, 1917, and the dam was purchased by the defendant in May, 1936, by a written contract providing for the payment of

the purchase price in installments, an initial payment of $500 being made, and a deed was delivered in April, 1943.

During the Company's ownership of both properties it operated a saw mill by water power on the land sold to the plaintiff and the flashboards on the Long Pond dam were used for the regulation of the supply of water in the same manner in which the plaintiff later used them until his controversy with the defendant. But in 1916 the mill burned and when the plaintiff took title only the water wheel remained. His deed described a parcel of land by metes and bounds "upon which the mill did stand" and included "a right to control or make any needed repairs on the ditch or raceway that supplies the mill with water." This ditch or raceway was not upon the land conveyed and the language of the grant is the same in this respect as in the deed by which the Parker Young Company acquired the title in 1905, as well as in previous conveyances of the same property. It did not appear that the Parker Young Company by its deed to the plaintiff conveyed any greater or different water rights than those which passed to it by its deed in 1905.

In September, 1917, the plaintiff sold the mill site to Smith, Kent and Hawkes. He repurchased Smith's interest in 1922, Hawkes' interest in 1936 and Kent's interest in 1937. After its sale to the plaintiff in 1917 the Parker Young Company operated two steam mills in succession on the site of the former mill. The first of these burned and the second was removed in 1930. In 1918 and 1919 the plaintiff used the water wheel to generate electricity and later, at intervals, to run a saw rig to saw slabs. The generation of electricity was in the summer months, and the operation of the wheel for both purposes covered a period not exceeding five years. From at least the middle 1920's until 1936 no use was made of the flashboards.

The plaintiff erected his saw mill in the Spring of 1936. In May of that year he told the defendant that he was glad that he had bought the Long Pond dam before someone else got it so that he (the plaintiff) could use the water. The defendant replied that he was willing that the plaintiff should use it, as long as he did so properly. The plaintiff attempted to buy the dam, but the defendant refused to sell because at some time he might want to use the power for a mill of his own which he might build. About that time in reply to an inquiry from a neighbor whether he had any right to remove the flashboards the plaintiff said that the defendant

had given him that right. Before his purchase of the mill site the plaintiff was employed by the Parker Young Company for some years in connection with the mill and the use of water from Long Pond.

■ An implied easement may be created by grant or reservation. There is no reservation here and we must consider whether there was a grant of such an easement in the deed from the Parker' Young Company to the plaintiff which conveyed the land upon which the mill formerly stood with the appurtenances. While the Parker' Young Company was the common owner of the mill and the Long Pond dam there was no easement, for the unity of title and possession prevented its existence. *Plimpton* v. *Converse*, 42 Vt 712, 717; *Miller* v. *Lapham*, 44 Vt 416, 433. The determinative question is not what estates the Parker Young Company could have carved out of the property of which it was the sole owner, or how it could have made one estate dominant and the other servient, but what kind of an estate it did in fact create and what rights the plaintiff has under his deed. *Miller* v. *Lapham, supra.*

■■ There can be no reservation of an easement by implication unless the easement is one of strict necessity (*Howley* v. *Chaffee*, 88 Vt 468, 474, 93 A 120, LRA 1915 D, 1010; *Read, Admr,* v. *Webster*, 95 Vt 239, 244, 113 A 814, 16 ALR 1068) but it has been held that in the case of an implied easement by grant a reasonable necessity suffices. *Goodall* v. *Godfrey*, 53 Vt 219, 222-3, 38 Am Rep 671. The rule is that everything apparent and continuous that is essential to the beneficial use and enjoyment of the property designated in the grant is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the grant as far as the grantor had power to grant it. *McElroy* v. *McLeay*, 71 Vt 396, 398-9, 45 A 898; *Dee* v. *King*, 77 Vt 230, 235, 59 A 839, 68 LRA 860; *Harwood* v. *Benton et al*, 32 Vt 724, 733. Of course the fact that the alleged dominant and servient tenements are not contiguous does not prevent the existence of an implied easement. *Perrin* v. *Garfield*, 37 Vt 304, 312.

■■ Necessity alone, however, does not create the easement, but is a circumstance to which resort is had to determine the real intention of the parties and raise the implication of a grant. *Read, Admr,* v. *Webster*, 95 Vt 239, 244, 113 A 814, 16 ALR 1068; *Willey, Admx,* v. *Thwing*, 68 Vt 128, 130, 34 A 428. "But implied

easements, whether by grant or reservation, do not arise out of necessity alone. Their origin must be found in a presumed intention of the parties, to be gathered from the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Dale* v. *Bedal,* 305 Mass 102, 25 NE2d 175, 176, and furthermore "it is the necessity at the time of the conveyance, and as things then were, without alteration, that is to govern." *McElroy* v. *McLeay,* 71 Vt 396, 404, 45 A 898, 901. The existence of an easement by implication depends upon the circumstances shown by the evidence as they were at the time of the grant. *Read, Admr,* v. *Webster,* 95 Vt 239, 244, 113 A 814, 16 ALR 1068.

■■ While an easement may be implied more easily in favor of the grantee in the deed than in favor of the grantor *(Dale* v. *Bedell, supra,)* the question here was one of fact for the trial court to decide, and we must construe the findings of fact so as to support the decree if it can reasonably be done. *Gardner* v. *Gauthier,* 101 Vt 147, 149, 141 A 682. There is no specific finding on this point, so that the fact must rest upon inference and we must assume in support of the decree that the inference, if reasonable, was drawn in the defendant's favor. *Smith* v. *Ladrie,* 98 Vt 429, 431, 129 A 302. The inquiry is whether an inference that it was not the intention of the parties that an implied easement in the use of the flashboards should pass as an appurtenance in the deed from the Parker Young Company to the plaintiff is one that the court below might fairly have drawn from the other facts certified to us. *Labor* v. *Carpenter,* 102 Vt 418, 422, 148 A 867, and cases cited. This question must be answered in the affirmative. As we have seen, when the plaintiff received his deed in 1917 there was no mill upon the premises, and the water from the Long Pond dam was not being used. The premises were described by metes and bounds, and a right of repairing the raceway from the dam on Mill Brook was included in the grant. The property thus transferred was exactly the same that had been conveyed to the plaintiff's grantor, and according to the findings passed title to no other water rights. If it had been intended to convey an easement in the use of the flashboards at Long Pond it is reasonable to suppose that this would have been mentioned in addition to the easement in the raceway and not have been left to implication. The premises

were those "upon which the mill did stand" for which as things then were the water from Long Pond was not necessary. True, the plaintiff knew that while the mill destroyed in 1916 had been operated by the Parker Young Company the flashboards were in use, but his statements to the defendant and to another witness tend to show that he understood that there was no intention to convey to him the easement that he claims. His attempt to purchase the dam would also have that tendency. There is no finding that whatever use of the flashboards was made by him during the time he operated the water wheel was under a claim that he had a right to do so, and, under the circumstances of this case, we cannot assume that it was. It follows that no error has been made to appear.

*Decree affirmed.*