**HELLE, Plaintiff, v. MARKOTAN, Defendant.**

Common Pleas Court, Trumbull County.

No. 64217. Decided April 15, 1955.

Harrington, Huxley & Smith, by Mr. Wright, for plaintiff.
Dennison & Loomis, by Mr. Loomis, for defendant.

## OPINION

By BIRRELL, J.

Sometime prior to the year 1928 The Brook Park Development Company dedicated an allotment in Liberty Township known as Church Hill Gardens of which the lots owned by the Plaintiff and the Defendant are a part. In 1928 the house which the Plaintiff now owns was built. A tile drain was, or had been, constructed along the rear of Plaintiff's lot which generally followed the rear line of adjoining lots in the allotment southward. It was of sufficient depth to drain the basement of Plaintiff's present house, and carried away both rain water from the roof, wash water and toilet water. This tile drain likewise served a house which about the same time had been constructed on a lot to the north of Plaintiff's lot, and drained southerly for some distance before emptying on the surface of the Development Company's land at a point where the land was lower, and its water could continue to run on the surface along the rear line of the lots and away to the south and out of the allotment. Nothing was placed on record regarding this drain. The deed to Plaintiff's predecessor contained no mention thereof except the usual warranty of title to the described property "together with appurtenances thereto."

On February 17th 1930 this property was reconveyed to the Brook Park Development Company subject to the mortgages which the owner had placed thereon. On October 10th, 1934 the mortgagee commenced foreclosure proceedings and purchased this property at Sheriff's sale (deed dated February 20th, 1935), which it later sold and conveyed by Warranty deed to one of Plaintiff's predecessors in title. This title, by various mesne transfers came to the present owner.

In due course, likewise, The Brook Park Development Company failed to pay taxes upon lots remaining unsold in the allotment which included the lots south of Plaintiff's property on both sides of the rear boundary of the lots along which the drain ran and along which it opened on to the surface as above mentioned. In due course, likewise the Defendant requested the County authorities to foreclose the tax lien upon all of these lots, and purchased them at tax sale, receiving a tax deed therefor, dated March 26th, 1954. In due course, likewise Defendant commenced constructing two houses on the two lots next south of Plaintiff's property, installed septic tanks for each of said houses, and in digging the leeching beds therefor crossed over and blocked the drain from Plaintiff's property. The blocking of this drain caused flooding of Plaintiff's basement.

This action is brought to secure an order requiring Defendant to unblock this drain. Defendant refuses to un-block the drain, claiming that Plaintiff has no easement for the same, and that he had no knowledge of said drain at the time he purchased his lots. His first claim is that if

Plaintiffs had acquired a right by prescription to use this drain, such right has been lost by merger of the dominant and survient estate in The Brook Park Development Company when it re-acquired the ownership in 1930 and held the same until 1935. Since 1935 insufficient time has elapsed to perfect an easement by prescription.

Without disputing this fact Plaintiff bases her claim upon the theory of implied grant which theory is clearly and definitely defined in the case of Ciski v. Wentworth, 122 Oh St 487, as follows:

"While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."

This theory has been touched upon in earlier Ohio cases:

Baker v. Rice, 56 Oh St 463; Shields v. Titus, 46 Oh St 528; Weber v. Miller, 9 C. C. 674; Mosher v. Hibbs, 1 C. C. ns 49; Keyler v. Eustis, 13 N. P. ns 601; Society v. Huntington, 15 N. P. ns 481; Brewing Co. v. Fasse, 11 O. Dec. Rep. 16.

It is clear that each of the elements of an implied grant of easement exist in our case. There has been a severance of unity of ownership; the use of the drain at the time of this separation had been long continued, and was clearly intended to be permanent; its use was reasonably necessary to the beneficial enjoyment of this home; and the servitude was continuous. The necessity of this drain was apparent from the fact that no other method existed for draining the basement of the house although rain water and surface water could naturally drain away because this house was situated upon the highest spot of ground in the allotment. The basement, however, was lower than the surface of the surrounding lots, and could not be drained without a drain extending some considerable distance from the lot on which the basement was constructed. The opportunity for such drainage existed along the rear of Plaintiff's lot and along the rear of the adjoining lots which coincided with the line of an old railway grade that passed through a "cut" in the surface of the land at the rear of Plaintiff's lot. This grade furnished a level line along which the drain had been constructed without the necessity of excessive excavation because either by accident or design the rear line of the lots fronting on Kay Court passed along the westerly side of this old approximately-level railroad right of way. Thus the drain of Plaintiff's basement was made possible. Since the evidence and conditions were such as to bring into existence all of the elements designated by the Supreme Court to imply a grant of a right to use this drain, and since the owners of the allotment were, no doubt, anxious to sell their lots, and were desirous of furnishing the appertunances including drainage for new homes to be built in their allotment, it appears to the Court that there was, without doubt, an implied grant to Plain-

tiff's predecessors of the use of an easement along the rear of the lots for Plaintiff's drain.

The owners of the allotment did not disturb this easement as long as the lots remained in their possession. While merger of title may have extinguished an easement acquired by prescription, adverse possession for twenty-one years is not necessary to create an easement by "implied grant," and it has even been held that after "union of seizen," "a new way is granted by implication if the necessity continues." Bates v. Sherwood, 5 CC ns 63.

Since the date (1930) of the Ciski v. Wentworth case, our Supreme Court has approved the theories therein set forth in the case of **Trattar v. Rausch, 154 Oh St 286,** thereby confirming the soundness of the law of "implied grant of easement" without specific mention thereof in the conveyance. Likewise relying upon that theory the Court of Appeals of Hamilton County decided the case of **Freiden v. The Western Bank and Trust Company, 72 Oh Ap 471,** which determined (3 syl) that

"The owner of an entire tract * * * may so use a part thereof as to create an apparent servitude or quasi-easement in favor of another portion to which the use becomes appurtenant, and upon the severance of the tract by a conveyance of the quasi-dominant portion with no express reference in the instrument of conveyance to such servitude, an implied easement may be held to have been granted."

Similarly recognition has been given in the case of **Blanchet v. Ottawa Hills Company, 63 Oh Ap 177,** by the Appellate Court of Lucas County.

This Court therefore believes that Plaintiff in our case acquired an easement by implication to the use of the drain along the rear of the lots in the Church Hill Gardens Allotment of the Brook Park Development Company.

Cases wherein permission to use was granted without intention of creating a permanent easement and clearly distinguishable, are

**Grau v. Kramer, 41 O. O. 332; Rex v. Hartman, 16 Abs 573; Church v. Clark, 37 Oh Ap 200.**

as are also the cases wherein ignorance of the existence of an easement is proven by the purchaser of the servient tenemant.

Brooks v. Massey, 4 O. Dec. Rep. 136; Bates v. Magennis, 19 C. C. ns 67; Keyler v. Eustis, supra.

The defendant in our case claims that he had no knowledge of this easement when he purchased his lots at the tax sale. He relies upon the authority of **Wright v. McCullough, 56 Oh Ap 153,** which holds that such a buyer has "a right to rely upon the verity of judicial records, and if there is no actual or constructive notice of defects therein, occupies the position of a purchaser in good faith for a valuable consideration, and is protected as such."

But, defendant fails to consider the extent of the title which a tax sale can convey. The deed which may be given in conveyance of lands forfeited to the State for taxes is defined at §5723.12 R. C., as follows:

"When a tract of land has been duly forfeited to the State and sold under such sections (§§5723.01 to 5723.19 R. C., inclusive), the convey-

ance of such real estate by the Auditor shall extinguish all previous title and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assessments and re-assessments not due at the time of such sale, and except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, become due and payable."

If the right to the continued use of the drain be conceded to have ripened into an easement by implied grant, and that its ripening either in 1928 when it was constructed or in 1935 when the severance in unity of ownership occurred, was "prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, become due and payable" then the tax deed which **excepts such easements**, is of no validity to protect this defendant in obstructing the easement. While such deeds have been held to grant "a new and perfect title free from all liens and encumbrances," the Statute expressly excepts therefrom "such easements and covenants running with the land as were created prior to the time the taxes * * * for the non-payment of which the land was forfeited became due and payable."

**Ross v. Franko, 139 Oh St 395; LaRue v. Taylor, 19 Oh St 376; DeSeife v. Oil Co., 61 Abs 72.**

part of former §5762 GC, by the amendment of 1943 (120 O. L. 154 at p. 164). Previous to such amendment an opinion of the Attorney General at 1939 O. A. G. Vol. 1 No. 572, pp. 717-722 reviews the many cases and the general rule under previous Statutes, that the conveyance in a tax sale did not divest the property of such covenants running with the land as building restrictions, which indicate that this comparatively new exception is not an innovation in limitation of the extent of titles conveyed by tax deeds.

The absence of a conveyance of fee simple title to the defendant differentiates his position in our case from that of the owners of servient estates in the cases of:

Keyler v. Eustis, supra; Brooks v. Massey, supra, and Bates v. Magennis, supra.

for in each of those cases the aggrieved owner was shown to be a bona fide and innocent purchaser for value. Even were this difference in titles not a bar in each such case it was apparently impossible to learn of the existence of the underground easement.

In our case the defendant could have learned of the easement had he inspected the property carefully before purchasing. Although he lived at the south side of the rectangle of roads bounding the portion of the allotment wherein all the lots lay and had lived in this vicinity since boy-hood he claims to have never learned of the source of the small stream which arose at the end of the tile drain. This same stream passed through his own lands just east of his home and had he driven around the rectangle of roads above mentioned he must have known that it arose within the lots enclosed thereby. Had he made an inspection he would have discovered the end of the tile from which he now claims wash and toilet water in nauseous proportions issues, and would thereby have learned that a drain existed. In the purchase of a tax title surely

the purchaser is bound to know what he is buying. The warning "Caveat emptor" applies in such cases. "The apparent signs of servitude which will pass as easements on severance of a heritage include not only those which must necessarily be seen, but those which may be seen or ascertained on a careful inspection by persons ordinarily conversant with the subject. Hence, it is that underground drains may pass by implied grant, even though not visible from the surface."

Freiden v. Bank & Trust Co. supra, at p. 476. Defendant bought lots in an allotment which was partially settled. Knowing of the restrictions imposed by the Development Company against "outside toilets" and "nuisances," he should have anticipated that there would be drains of some kind for inside conveniences, and was bound to inspect the premises therefor, before he can claim the privileges of an innocent purchaser for value (which he is not in this instance).

In the decision of this Motion for a temporary restraining order, and of the Demurrer to the Petition, the Court has taken some time and made a rather extended examination of authorities as the foregoing will indicate. The conclusion is that the demurrer should be Overruled, and the application for a temporary Order requiring the Defendant to unblock and open the drain should be granted. Acknowledgment should be made of Defendant's attempt to comply with Plaintiff's request before this decision has been announced. AN ORDER MAY BE DRAWN ACCORDINGLY.