**Marcus METHONEN, individually and as Trustee of the Methonen Trust, Appellant,**

v.

**Rick STONE and Robert Talmage, Appellees.**

No. S–7403.

Supreme Court of Alaska.

July 18, 1997.

Rehearing Denied Aug. 7, 1997.

Thomas E. Meacham, Anchorage, for Appellant.

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

This appeal involves a dispute over property rights pertaining to a water well which is located on one subdivision lot and has been used as a source of water by owners of other lots in the subdivision.

### II. FACTS AND PROCEEDINGS

In 1970 Howard and Daniel Hede subdivided eleven lots within Tract Five of Siefker Subdivision No. 3. The Hedes retained Lot 10, drilled a well there, constructed a well house, and installed water lines which supplied water to Lots 1 through 10. The subdivision plat which the Hedes recorded indi-

cates the location of the well but does not disclose that it services the other lots.

When the Hedes sold Lot 10 to Fermo Albertini in October 1974, the Hedes and Albertini executed an agreement (Water Agreement) to continue the water service. In part the Water Agreement provided that "[t]he Party of the First part [the Hedes] has previously agreed to furnish water to any owner of [Lots 1 through 10]." This Water Agreement was not recorded until 1985. In November 1974, Albertini conveyed Lot 10 to Dennis Oney. In June 1975, Oney sold Lot 10 to Kathryn Ostrosky. Finally, in January 1976, Ostrosky conveyed Lot 10 to Marcus and Gwendolyn Methonen. The statutory warranty deed by which Methonen took title contained the following provision:

> SUBJECT TO easements, restrictions, reservations and exceptions of record, and well site as delineated on the subdivision plat.

When Methonen purchased the property, he was aware of the pipes running from the well on his property to other lots in the subdivision.[1] However, he asserts that the real estate agent who sold him Lot 10 "led me to understand that I did not need to worry about maintaining the water system or providing water to anyone." Shortly after taking title, Methonen learned that the owners of the other lots in the subdivision believed that he was legally obligated to provide them with water. Indeed, he "accepted money for the water system from system users when they provided it [to him]."

However, Methonen refused to acknowledge an obligation to supply water to the other lots, and in February 1985 shut off the water supply to the others. Settlement negotiations ensued and service was restored. During this period, the 1974 Hedes–Albertini Water Agreement (recognizing the original community water agreement) was recorded. Also, in February 1985 the Hedes, Albertini,

and Ostrosky signed an "Acknowledgment of Water Well Agreement." This document contains the statement that Albertini, Ostrosky, and Methonen were all "aware of the [Hede–Albertini] Water Well Agreement and of the need to serve the lots in the subdivision with water."

Appellees Rick Stone and Robert Talmage purchased Lots 3 and 4 respectively in November 1985 and October 1991. Methonen continued to deny any obligation to provide water and discontinued service again in July 1994. Stone and Talmage then instituted suit against Methonen, contending they had an easement for water from the well on Methonen's property. They sought a judgment permanently enjoining Methonen from "any further interference with the water supply" as well as damages.

On cross motions for summary judgment, the superior court determined that Methonen's deed created an easement in favor of Stone and Talmage.[2] The superior court based its ruling on the provision in Methonen's deed stating that he took subject to recorded easements and the well site delineated on the subdivision plat. The superior court also relied on the 1985 "Acknowledgment of Water Well Agreement" signed by the Hedes, Albertini, and Ostrosky.[3]

Methonen now brings this appeal.

## III. *STANDARDS OF REVIEW*

■ Grants of summary judgment are reviewed to determine whether genuine issues of material fact exist, drawing all reasonable inferences in favor of the opposing party, and whether any party is entitled to judgment as a matter of law. *Newton v. Magill*, 872 P.2d 1213, 1215 (Alaska 1994) (citing *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990)).

---

1. Methonen admits that at the time of purchase he was aware of the well site, and that the water lines apparently ran from it to other lots in the subdivision.

2. The superior court's Final Judgment states in part that Stone and Talmage "are entitled to water service from the well on [Methonen's] land

under an easement contained in the deed from Ostrovsky [sic] to Methonen."

3. In regard to this agreement the superior court observed that "Ms. Ostrovsky [sic] acknowledges that the owner of lot 10 agrees to serve the other lots in the subdivision with water. In exchange the lot owners are required to pay a fee."

## IV. DISCUSSION

■ As an initial matter, we note that Stone and Talmage in moving for summary judgment failed to demonstrate that Methonen had either actual or constructive [record] notice of a community water agreement at the time he purchased Lot 10 from Ostrosky. In granting summary judgment in favor of Stone and Talmage, the superior court held that an easement for water was created by the "subject to" provisions of the 1976 deed from Ostrosky to Methonen and the 1985 Acknowledgment of Water Well Agreement. We conclude that the superior court erred in granting summary judgment to Stone and Talmage on these grounds.

■ It is well established that the intention to create a servitude must be clear on the face of an instrument; ambiguities are resolved in favor of use of land free of easements. *Martinez v. Martinez*, 93 N.M. 673, 604 P.2d 366, 368 (1979); *Wing v. Forest Lawn Cemetery Ass'n*, 15 Cal.2d 472, 101 P.2d 1099, 1103 (1940); *Berryman v. Hotel Savoy Co.*, 160 Cal. 559, 117 P. 677, 681 (1911). Neither the Ostrosky deed to Methonen nor the subdivision plat identifies an easement for a community water system based on the well located on Lot 10. Neither document indicates that the owner of Lot 10 is obligated to supply water to any of the remaining subdivision lots. In short, these documents did not provide either actual or constructive notice to Methonen of the existence of a community water system agreement at the time he purchased Lot 10 in 1976.

Nor can notice be inferred from the post-hoc "Acknowledgment of Water Well Agreement." This 1985 document was neither signed by Methonen nor recorded when Methonen purchased Lot 10 in 1976. As such, it cannot bind him of its own force. Nor can the unverified assertions contained in the Acknowledgment serve as evidence that Methonen was aware of the community water system agreement at the time he purchased Lot 10. The statements as to Methonen's knowledge contained in the Acknowledgment are unsworn, and thus cannot support a ruling on a motion for summary judgment. *Jennings v. State*, 566 P.2d 1304, 1309–10 (Alaska 1977). A holding that Methonen is bound to supply water to Stone and Talmage must find its rationale in some basis other than the Ostrosky deed, the plat of the subdivision, and the 1985 Acknowledgment of Water Well Agreement.

■ Although we conclude that the superior court erred in ruling that Stone and Talmage were entitled to summary judgment, we further hold that on this record Methonen is not entitled to the entry of summary judgment on his cross motion for summary judgment. For in our view Stone and Talmage have raised genuine issues of material fact as to two separate potential grounds for establishing an easement for water from the well located on Methonen's Lot 10. These separate theories are those of inquiry notice and implied easement.[4]

---

4. *Methonen notes that Alaska's recording statute protects bona fide purchasers against unrecorded adverse interests unless they have actual notice of that interest. AS 40.17.080 provides:*

**Effect of recording on title and rights; constructive notice.** (a) Subject to (c) and (d) of this section, from the time a document is recorded in the records of the recording district in which land affected by it is located, the recorded document is constructive notice of the contents of the document to subsequent purchasers and holders of a security interest in the same property or a part of the property.

(b) A conveyance of real property in the state, other than a lease for a term of less than one year, is void as against a subsequent innocent purchaser in good faith for valuable consideration of the property or a part of the property whose conveyance is first recorded. An unrecorded conveyance is valid as between the parties to it and as against one who has actual notice of it. In this subsection, "purchaser" includes a holder of a consensual interest in real property that secures payment or performance of an obligation.

*Methonen's knowledge of the well, and even his actual or constructive knowledge that a well was depicted on the subdivision plat, or that a well site was referred to in his deed from Ostrosky, technically is not "actual notice" of an easement. However, courts have construed the actual notice exception in state recording statutes to incorporate common law theories of constructive notice. See, e.g., Johnson v. Bell, 666 P.2d 308, 310 (Utah 1983); Brooks v. Reynolds, 37 Okla. 767, 132 P. 1091, 1092 (1912). See also "actual notice," Black's Law Dictionary 1061 (6th ed. 1990). Legislative enactments are presumed not to abrogate the common law, except where the intent to do so is manifest. Boyd v. United States,*

## A. *Inquiry Notice*

The basis for our conclusion that genuine issues of material fact are presented by this record resides in the fact that at the time of his purchase of Lot 10, Methonen was aware of the existence of the well on the property and the water lines running from the well to the adjoining lots in the subdivision. These facts are sufficient to place Methonen on inquiry notice as to the existence of the community water system agreement.

■ It is well established that a purchaser will be charged with notice of an interest adverse to his title when he is aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude. *Miebach v. Colasurdo*, 102 Wash.2d 170, 685 P.2d 1074, 1078–79 (1984); *Cohen v. Thomas & Son Transfer Line, Inc.*, 196 Colo. 386, 586 P.2d 39, 40 (1978); *Putnam v. Dickinson*, 142 N.W.2d 111, 122 (N.D.1966); *Helle v. Markotan*, 73 Ohio Law Abs. 387, 137 N.E.2d 715, 719–20 (Com.Pl.1955); *Holly Lumber & Supply Co. v. Friedel*, 271 Mich. 425, 261 N.W. 70, 72 (1935); *Belt v. Matson*, 120 Or. 313, 252 P. 80, 82–83 (1927) (quoting 2 Robert Thomas Devlin, *Devlin on Real Estate* 1342 (3d ed.1911)); *Brooks v. Reynolds*, 37 Okla. 767, 132 P. 1091, 1092 (1912); *Rankin Mfg. v. Bishop*, 137 Ala. 271, 34 So. 991, 992 (1903); *Gaines v. Saunders*, 50 Ark. 322, 7 S.W. 301, 302 (1888) (citing William Pratt Wade, *Notice*, § 17, c. 5 (2d ed. 1886)). The purchaser is considered apprised of those facts obvious from an inspection of the property. *Kutschinski v. Thompson*, 101 N.J. Eq. 649, 138 A. 569, 571–72 (1927); *Heck v. Morgan*, 88 W.Va. 102, 106 S.E. 413, 418 (1921). *Cf.*

*Sanborn v. McLean*, 233 Mich. 227, 206 N.W. 496, 498 (1925).[5]

■ Lack of diligence in the prosecution of a required inquiry creates a conclusive presumption of knowledge of those facts which reasonable inquiry would have revealed. *Wapa Oil & Dev. Co. v. McBride*, 84 Okla. 184, 201 P. 984, 987 (1921); *McBee v. O'Connell*, 19 N.M. 565, 145 P. 123, 124–25 (1914); *Bigelow v. Brewer*, 29 Wash. 670, 70 P. 129, 132 (1902); *Betts v. Letcher*, 1 S.D. 182, 46 N.W. 193, 197 (1890) (quoting Pomeroy); *Montgomery v. Keppel*, 75 Cal. 128, 19 P. 178, 179–80 (1888) (rule is "well settled"). Generally, a proper investigation will include a request for information from those reasonably believed to hold an adverse interest. Should these sources mislead, the purchaser is not bound. *Kelly v. Fairmount Land Co.*, 97 Va. 227, 33 S.E. 598 (1899); *Yates v. Hurd*, 8 Colo. 343, 8 P. 575, 576 (1885). Reliance on the statements of the vendor, or anyone who has motive to mislead, is not sufficient. *Corn Belt Trust & Sav. Bank v. May*, 197 Iowa 54, 196 N.W. 735, 738 (1924); *W.L. Moody & Co. v. Martin*, 117 S.W. 1015, 1016–17 (Tex.Civ.App.1909). *But see Simpson v. Hinson*, 88 Ala. 527, 7 So. 264, 266 (1890).

■ Methonen did allegedly receive misleading information from the real estate agent who sold him the property. However, reliance on this source would not satisfy his duty to investigate. Since Methonen was on notice of a possible obligation to supply water to neighboring lots, the proper object of his inquiry was the owners of those lots. Should those adjoining owners have misled Methonen, he would not be bound.[6]

116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *Follette v. Pacific Light & Power Corp.*, 189 Cal. 193, 208 P. 295 (1922). We therefore conclude that a purchaser is bound by an unrecorded easement under AS 40.17.080's actual notice provision when it would be valid against him under the common law doctrines of implied easement or inquiry notice.

5. If a purchaser or incumbrancer, dealing concerning property of which the record title appears to be complete and perfect, has information of extraneous facts, or matters in ·pais, sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage, or in-

cumbrance, or respecting some outstanding interest, claim, or right which is not the subject of record, and he omits to make proper inquiry, he will be charged with constructive notice of all the facts which he might have learned by means of a due and reasonable inquiry.
*Petrain v. Kiernan*, 23 Or. 455, 32 P. 158, 159 (1893) (quoting 2 John Norton Pomeroy, *Pom. Eq. Jur.* § 613 (2d ed. 1892)).

6. If the purchaser has notice of an encumbrance to his title, he is charged with knowledge of its extent and nature if such were discoverable by reasonable inquiry. *Kidder v. Flanders*, 73 N.H. 345, 61 A. 675, 676 (1905); *Mayfield v. Turner*,

Given the record before the superior court when it ruled on the parties' cross-motions for summary judgment, we conclude that there are genuine issues of material fact as to whether Stone and Talmage can establish that Methonen was on inquiry notice as to the existence of a prior agreement to a community water system that was intended to run with the land.

### B. Implied Easement

As noted above, we are also of the opinion that the record shows the presence of genuine issues of material fact as to whether an easement for water can be established under an implied easement theory. The fact that the well and water lines running from Lot 10 to the adjoining lots were visible and permanent at the time Methonen purchased Lot 10 might give rise to an easement by implication.

An easement will be implied upon the severance of an estate when the use made of the servient parcel is manifest, continuous and reasonably necessary to the enjoyment of the dominant parcel.[7] *Demoski v. New,* 737 P.2d 780, 783–84 (Alaska 1987); *Freightways Terminal Co. v. Indus. & Commercial Constr., Inc.,* 381 P.2d 977, 982–84 (Alaska 1963). *See also Woods v. Houle,* 235 Mont. 158, 766 P.2d 250, 253 (1988) (separation of unified estate required); *Pogue v. Collins,* 146 Cal. 435, 80 P. 623, 624 (1905) (same); *Alrich v. Bailey,* 97 Nev. 342, 630 P.2d 262, 264 (1981) (use must be continuous and manifest); *Civilian Defense Inc. v. Ross,* 78 Ohio Law Abs. 172, 152 N.E.2d 160, 161 (App.1958) (same); *Ovard v. Cannon,* 600 P.2d 1246, 1247 (Utah 1979) (use must be reasonably necessary to enjoyment of dominant parcel); *Rightsell v. Hale,* 90 Tenn. 556, 18 S.W. 245, 246 (1891) (same). *See also Hutcheson v. Sumrall,* 220 Miss. 834, 72 So.2d 225, 227 (1954) (use is apparent if discoverable upon inspection). It is not necessary that the parcels be contiguous. *Freightways,* 381 P.2d at 983.

The majority of jurisdictions hesitate to imply an easement in favor of a grantor; implied reservations in the grantor must meet a higher threshold than implied grants from the purchaser's estate. *See Wheeler v. Taylor,* 114 Vt. 33, 39 A.2d 190, 192 (1944); *Wiesel v. Smira,* 49 R.I. 246, 142 A. 148, 149 (1928). Alaska, however, does not adhere to this distinction. We apply the same standard, "regardless of whether the easement is one of implied grant or implied reservation." *Freightways,* 381 P.2d at 984.

Once an easement is implied, it runs with the land and is enforceable against subsequent purchasers of the servient estate so long as it retains its continuous and apparent nature and remains reasonably necessary to the enjoyment of the dominant estate. *Johnson v. Gustafson,* 49 Idaho 376, 288 P. 427, 429 (1930); *Durante v. Alba,* 266 Pa. 444, 109 A. 796, 797 (1920); *Znamanacek v. Jelinck,* 69 Neb. 110, 95 N.W. 28 (1903); *Quinlan v. Noble,* 75 Cal. 250, 17 P. 69, 70 (1888). *Cf. Baker v. Rice,* 56 Ohio St. 463, 47 N.E. 653, 655 (1897) (simultaneous conveyance of both parcels implies easements in each under same rules as if other were retained by grantor). *Compare Dale v. Bedal,* 305 Mass. 102, 25 N.E.2d 175, 176 (1940) (no implied easement in severed estate against subsequent owner of retained estate for use of

180 Ill. 332, 54 N.E. 418, 421 (1899). *See also Fresno Canal & Irrigation Co. v. Rowell,* 80 Cal. 114, 22 P. 53, 54 (1889) (water rights). Misstatements by the vendor as to the extent of the encumbrance do not lift the presumption of knowledge; the purchaser is considered apprised of all facts available by interrogation of the party adverse in interest. *Wahl v. Stoy,* 72 N.J. Eq. 607, 66 A. 176, 179–80 (Ch.1907); *Ormes v. Weller,* 52 S.W. 937, 938 (Ky.1899).

7. *See also* 7 *Thompson on Real Property* § 60.03(b)(4)(i), at 469 (David A. Thomas ed. 1994). There are authorities to the effect that water pipes which supply one lot from another constitute a manifest and continuous easement.

*See Berlin v. Robbins,* 180 Wash. 176, 38 P.2d 1047, 1049–51 (1934) (artificial structures such as pipes constitute apparent and continuous easements); *German Sav. & Loan Soc'y v. Gordon,* 54 Or. 147, 102 P. 736, 739–40 (1909) (water spout is continuous); *Larsen v. Peterson,* 53 N.J. Eq. 88, 30 A. 1094, 1097–98 (Ch.1895) (use of artificial mechanism, such as pump, to create water flow does not render easement noncontinuous); *Kelly v. Dunning,* 43 N.J. Eq. 62, 10 A. 276, 279–80 (Ch.1887) (artificial watercourse is apparent and continuous) (modified in other part by *Dunning v. Kelley,* 46 N.J. Eq. 605, 22 A. 128 (1890)).

underground septic tank); *Tredwell v. Inslee,* 120 N.Y. 458, 24 N.E. 651, 653 (1890) (easement that was not implied for grantor also not enforceable by subsequent purchaser of that estate).

Our review of the record persuades us that Stone and Talmage have raised genuine issues of material fact as to whether the use of water from Lot 10 to supply other lots in the subdivision was manifest, continuous and reasonably necessary to the enjoyment of the dominant parcels at the relevant times.[8] Methonen is therefore not entitled to summary judgment in regard to an implied easement theory.

## V. CONCLUSION

The superior court's judgment entered in favor of Stone and Talmage is REVERSED and VACATED. The case is REMANDED for further proceedings not inconsistent with this opinion. Upon remand among the issues remaining for determination are whether Stone and Talmage are entitled to a water easement on either an inquiry notice theory or an implied easement theory.

---

8. To bind Methonen, the implied easement must have met these criteria both upon the severance of the estates and at the time of the conveyance of the servient parcel to Methonen.